Suzan L. SMITH, Plaintiff,

v.

HIGHLAND BANK, et al., Defendants.

No. CV 95–B–480–S.

United States District Court,
N.D. Alabama,
Southern Division.

Jan. 31, 1996.

W. Lewis Garrison, Jr., Jackson Garrison & Sumrall P.C., Birmingham, AL, Charles S. Zimmerman, Barry G. Reed, Robert R. Hopper, Zimmerman Reed, Minneapolis, MN, for plaintiff.

W. Michael Atchison, Starnes & Atchison, Birmingham, AL, for Highland Bank.

Lee H. Zell, Balch & Bingham, Birmingham, AL, David J. Butler, Tracie H. Yoon, Elaine A. Panagakos, Brownstein & Zeidman P.C., Washington, DC, for Molton Allen & Williams.

## MEMORANDUM OPINION

BLACKBURN, District Judge.

Currently pending before this court are the motions of defendants Highland Bank and Molton Allen & Williams ("MAW") for summary judgment as to Counts I and II and to dismiss [1] Count III of plaintiff's Com-

---

1. Federal Rule of Civil Procedure 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R.CIV.P. 12(b). In this case, the court had before it evidence outside the pleadings pertinent to Count III that was submitted in support of and in opposition to defendants' motions for summary judgment as to Counts I and II. Because the court considered "matters outside the pleading," the court shall treat defendants' motions to dismiss Count III as motions for summary judgment.

plaint.[2] Upon consideration of the record, the submissions of the parties, the relevant law, and the argument of counsel, the court is of the opinion that defendants' motions for summary judgment as to plaintiff's claims are due to be granted.

Plaintiff Suzan L. Smith commenced this putative class action against defendants for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* Plaintiff claims that the TILA disclosure form she received in connection with the refinancing of her home mortgage should have disclosed certain expedited delivery fees totaling $25.00 as "finance charges," rather than as part of the "amount financed." In addition, plaintiff claims that the notice Highland Bank provided to her of her right to rescind the transaction failed to comply with 12 C.F.R. § 226.23. Plaintiff claims that the failure to disclose the $25 charge as a finance charge and the allegedly deficient notice of her right to rescind the transaction violated TILA.

In Counts I and III of her Complaint, plaintiff seeks actual damages, statutory damages, attorney's fees and costs, and a declaratory judgment that each class member with a non-purchase money mortgage from Highland Bank or MAW is entitled to rescind his or her mortgage transaction. In Count II of her Complaint, plaintiff appears to seek restitution of the expedited delivery fees. Smith purports to represent three classes of plaintiffs, consisting of all borrowers who entered into consumer credit transactions for loans originated by or assigned to Highland Bank and MAW during the one-year period preceding the filing of this action for purposes of Count I; during the six-year period preceding the filing of this action for purposes of Count II; and during the three-year period preceding February 27, 1994 for purposes of Count III.

**2.** In her original Complaint, plaintiff asserted Counts I and II. On June 28, 1995, plaintiff amended her Complaint to add Count III. The court will refer to both documents collectively as the "Complaint."

## FACTUAL BACKGROUND

Plaintiff Suzan Smith entered into a transaction with defendant Highland Bank to obtain a mortgage loan to refinance the existing mortgage on her home. (*See* First Bynum[3] Aff. ¶ 2). The transaction was closed on February 28, 1994, (*id.* ¶ 2), and plaintiff's mortgage was then assigned to defendant MAW, (Compl. ¶ 15). In connection with the refinancing transaction, plaintiff received a Truth in Lending disclosure statement and a HUD–1 Settlement Statement. (Ex. 1 & 2 Submitted in Support of MAW's Motion for Summary Judgment ("Def.Ex. 1 & 2")). The settlement agent for plaintiff's mortgage refinancing was an attorney named Frank K. Bynum of Birmingham, Alabama. (First Bynum Aff. ¶ 2).

Among the other charges identified on the HUD–1 Settlement Statement as "Paid from Borrower's Funds at Settlement" was a $25.00 charge itemized on line 1303 of the Statement as "Fed–X Pay-off/Courier Package to Fed–X/The Delivery Co." (Def.Ex. 1). According to the testimony of attorney Bynum, the $25 charge was actually expended as follows:

$9 paid to the United Parcel Service ("UPS") for overnight delivery of the pay-off funds to Smith's previous mortgagee;

$10 paid to The Delivery Company to deliver the executed loan documents to Highland Bank;

$6 retained by attorney Bynum.

(First Bynum Aff. ¶ 5). Bynum also testified that he imposed the $25 charge upon his own initiative, after discussion with plaintiff and with her authorization, and that neither defendant requested or required the expedited delivery services for which the charge was made. (First Bynum Aff. ¶¶ 6, 7). MAW also submitted the loan instructions issued to Bynum from Highland Bank, which do not mention the method of delivery of documents or funds pertinent to plaintiff's loan. (*See*

**3.** Frank K. Bynum is an attorney who handled the closing of the mortgage financing transaction between plaintiff and Highland Bank. (Bynum Aff. ¶ 2). MAW submitted two affidavits of Mr. Bynum. The first affidavit will be referred to as "First Bynum Aff.," and the second will be referred to as "Second Bynum Aff."

Ex. 3 Submitted by MAW in Support of its Motion for Summary Judgment).

In opposition to defendants' motions for summary judgment, plaintiff submitted a letter from Real Estate Financing, Inc. ("REF"), plaintiff's previous lender, to Highland Bank, in which REF gives the pay-off amount up to March 1, 1994. (Ex. A Attached to Pl. Brief in Opposition to MAW's Motion for Summary Judgment ("Pl.Ex. A")). The letter states that any pay-off received after March 1, 1994 would require an additional $459.97 interest per month. (*Id.*)

With regard to Bynum's role in the transaction, plaintiff submitted a document in which the borrower states that neither Highland Bank, "nor anyone acting on its behalf, and specifically Frank K. Bynum" advised or consulted with the borrower as to the title acquired or the exceptions or exclusions contained in the Owners and Mortgages Policy. (Ex. B Attached to Pl. Brief in Opposition to MAW's Motion for Summary Judgment ("Pl. Ex. B")). The letter further states that Highland Bank advised the borrower to seek her own counsel or attorney. (*Id.*) Finally, plaintiff submitted a "Purchaser's Disclosure" form, disclosing to the borrower that Bynum had a potential conflict of interest in consummating the transaction between the Highland Bank and the borrower. (Ex. C Attached to Pl. Brief in Opposition to MAW's Motion for Summary Judgment ("Pl.Ex. C")). In response to plaintiff's submissions, MAW submitted a second affidavit from Bynum in which he states that "[w]hen closing a mortgage refinancing transaction, he acts in certain capacities as the representative of the lender and in other capacities as the representative of the borrower." (Second Bynum Aff. ¶ 2). Bynum further states that it is because he represents both the lender and the borrower that he issues the "Purchaser's Disclosure" form, disclosing the potential conflict in representing both parties to the transaction. (*Id.* ¶ 3). Finally, Bynum states in his second affidavit that in arranging and charging fees for the expedited delivery services, he acted solely on behalf of the borrower, plaintiff, and not on behalf of Highland Bank or MAW, and that these services benefitted plaintiff directly by enabling

her to avoid paying an additional $459.97 interest. (*Id.* ¶ 5).

As to Count III of plaintiff's Complaint, plaintiff attached to Count III a copy of the "Notice of Right to Cancel," a copy of which is included as an Appendix to this Opinion. The Notice provides information in the first section about the borrower's right to cancel the transaction under the subheading of "Your Right to Cancel." Under a second subheading of "How to Cancel," the Notice states that if the borrower decides to cancel . the transaction, she should notify Highland Bank at a specified address no later than midnight on March 3, 1994. The Notice then provides space for the borrower's signature and date of signature under the words "I WISH TO CANCEL" to be completed and mailed to Highland Bank should the borrower decide to rescind the transaction. Following this section, there is a section of the Notice entitled "ACKNOWLEDGMENT OF RECEIPT." In this section, the borrower acknowledges that she received two copies of the above Notice as well as one copy of the Truth–in–Lending Disclosure Statement and is dated February 28, 1994, the date of the closing. Below this section is a final section entitled "CERTIFICATE OF CONFIRMATION." This section states that more than three business days have elapsed since the borrower received the Notice and provides space for the borrower to sign, stating that she does not wish to rescind the transaction. This section is dated March 4, 1994. Finally, there is a statement at the bottom of the form that states: "NOTE: All parties who execute Acknowledgment of Receipt must execute Certificate of Confirmation."

## DISCUSSION

### A. *TILA Claims (Counts I and III)*

Plaintiff alleges that Highland Bank violated TILA in two ways. First, plaintiff alleges that the bank's failure to disclose the $25 fee for expedited delivery services as a "finance charge" violates TILA. Second, plaintiff alleges that the Notice of Right to Cancel provided to her by the bank failed to comply with TILA's requirements.

1. *Delivery Fee Claim (Count I)*

a. *Direct Liability*

■ To determine whether a particular loan closing expense constitutes a "finance charge" under TILA, the court must consult the statute, 15 U.S.C. § 1605(a), and the applicable portion of Regulation Z, 12 C.F.R. § 226.4(a), promulgated by the Federal Reserve Board. *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 949 (11th Cir.1993). "The official staff interpretations of Regulation Z, unless demonstrably irrational, are binding." *Id.*

TILA defines "finance charges" as "charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly *by the creditor* as an incident to the extension of credit." 15 U.S.C. § 1605 (emphasis added); *see also* 12 C.F.R. § 226.4(a) (1995). The Federal Reserve Board Official Staff Commentary to Regulation Z ("Staff Commentary"), in its form prior to April 1, 1995, explained that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor are not finance charges, as long as the creditor does not retain the charges." 12 C.F.R. Pt. 226 Supp. I, at § 226.4(a)–3. Effective April 1, 1995, the Federal Reserve Board amended the Staff Commentary to clarify its position with respect to the precise issue presented in this case: whether charges imposed on a borrower by a settlement agent constitute finance charges. The Staff Commentary now provides:

> 4. *Charges by settlement agents.* Charges imposed on the consumer by a settlement agent (such as an attorney, escrow agent, or title company) are finance charges only if the creditor requires the particular services for which the settlement agent is charging the borrower and the charge for those services is not otherwise excluded from the finance charge. For example, a fee for courier service charged by a settlement agent to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge.

12 C.F.R. Pt. 226 Supp. I, at § 226.4(a)–4 (1995).

■ Under the revised Staff Commentary, then, a charge imposed by a settlement agent can *only* be a finance charge "if the creditor *requires* the particular services for which the settlement agent is charging the borrower." *Id.* (emphasis added). Specifically, "a fee for courier service charged by a settlement agent to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge." *Id.; see also Curtis v. Secor Bank,* 896 F.Supp. 1115, 1119 (M.D.Ala.1995) ("In light of the Board's revised commentary . . . the court finds that the narrow inquiry is whether [the creditor] required the law firm to send the payoff documents by overnight delivery or retained the charge.").

■ In this case, there is no evidence that either the creditor, Highland Bank, or its assignee, MAW, required the expedited delivery services for which plaintiff was charged $25. The settlement attorney who closed plaintiff's loan, Frank Bynum, has testified that he imposed that charge upon his own initiative after discussion with plaintiff and with her authorization. Bynum has also testified that neither Highland Bank nor MAW required or requested the expedited delivery services for which the charge was imposed. Bynum's testimony is supported by the absence of any delivery requirement in the loan closing instructions Highland Bank issued to Bynum in connection with plaintiff's loan, which do not even mention the delivery of the pay-off funds or the executed loan documents, let alone specify any required mode of delivery.

Plaintiff, however, contends that although Highland Bank did not explicitly *require* the expedited delivery services, Highland Bank knew that overnight courier charges would be required to accomplish the delivery of pay-off funds to plaintiff's previous lender. According to plaintiff, Highland Bank should have known that the overnight courier services would be required based on the pay-off statement which her previous lender, REF, sent to Highland Bank. All the pay-off statement shows, however, is that plaintiff

would have owed an additional month's interest on her previous mortgage if REF had not received the pay-off by March 1, 1994. That Highland Bank may have *known* of the financial consequences of plaintiff's decision not to use an overnight courier does not mean that Highland Bank *required* those expedited delivery services. *See Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 943 (7th Cir. 1995) (It would be contrary to the intended meaning of the staff commentary to construe "required" loosely, as "anticipated."). Rather, the evidence establishes that Bynum imposed the delivery charges, not Highland Bank. Under these facts, the revised Staff Commentary makes clear that the $25 fee for expedited delivery services is not a finance charge.

Plaintiff also argues, however, that Bynum acted as the attorney and agent for the creditor, Highland Bank and, therefore, that the charges imposed by Bynum should be imputed to the creditor. As support, plaintiff has submitted the letter in which the borrower states that neither Highland Bank, "nor anyone acting on its behalf, and specifically Frank K. Bynum" had advised or consulted with the borrower as to the title acquired and further states that Highland Bank advised the borrower to seek her own counsel or attorney. Plaintiff also submitted the "Purchaser's Disclosure" form, disclosing to the borrower that Bynum had a potential conflict of interest in consummating the transaction between Highland Bank and the borrower.

These documents do not support plaintiff's position, particularly when considered in the context of all of the evidence. Bynum states clearly in his affidavit that while he acted as the representative of the creditor, Highland Bank, in certain aspects of the closing transaction, he also acted as the agent of the borrower, plaintiff, in other aspects of the transaction. The documents submitted by plaintiff support Bynum's statement. In the letter, for example, the borrower states that Bynum has not provided her with any advice concerning the title to the subject property or made any representations concerning the sales contract. This acknowledgment is necessary precisely because Bynum represented the borrower in certain aspects of the closing

transaction. Similarly, the Purchaser's Disclosure form states that Bynum has a potential conflict of interest in consummating the transaction, a conflict which existed because he was representing both the lender and the borrower. With regard to the delivery fees, however, Bynum testified that, "[i]n arranging and charging fees for the expedited delivery services, ... [he] acted *solely* on behalf of the borrower, Suzan Smith, and not on behalf of Highland Bank or MAW." (Second Bynum Aff. ¶ 5 (emphasis added)). Bynum further testified that he imposed the $25 charge for the expedited delivery services after discussion with plaintiff and after receiving her authorization to utilize the services and impose the charge. By contrast, Bynum testified that he never even discussed the expedited delivery services or the charge with anyone from Highland Bank or MAW. Plaintiff, on the other hand, has not presented any evidence suggesting that when Bynum imposed the delivery fees, he was acting on behalf of Highland Bank, rather than on plaintiff's behalf.

That Bynum acted solely as the representative of plaintiff in imposing the expedited delivery charge is further evidenced by the fact that the services paid for by that charge inured solely to Smith's benefit. The pay-off statement issued by Smith's previous lender, REF, indicates that Smith would have owed an additional $459.97 interest to REF if it did not receive the pay-off funds by March 1, 1994, the day after Smith's closing. Thus, the $25 charge which Smith paid for expedited delivery services enabled Smith to realize a net savings of $434.97. By contrast, Highland Bank derived no benefit from the expedited delivery of the pay-off funds. Therefore, plaintiff has produced insufficient evidence from which a reasonable jury could conclude that in imposing the delivery services fees, Bynum was acting as Highland Bank's agent.

Plaintiff next contends that the new Staff Commentary, which became effective on April 1, 1995, should not be applied retroactively to plaintiff's claims, which arose before that date. The court disagrees.

An agency rule "simply clarifying an unsettled or confusing area of the law ...

does not change the law; but restates what the law according to the agency is and has always been." *Pope v. Shalala,* 998 F.2d 473, 483 (7th Cir.1993); *see also United States v. Scroggins,* 880 F.2d 1204, 1215 (11th Cir.1989) (amendments to sentencing guidelines promulgated by Sentencing Commission clarify rule but do not effect substantive change and, therefore, can be applied to offenders convicted of offenses before effective date of amendments), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). Thus, such a rule "is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand." *Manhattan General Equip. Co. v. Commissioner,* 297 U.S. 129, 135, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). In addition, the agency's interpretation of an amendment as a clarification, rather than a substantive change, is entitled to great deference by a reviewing court. *Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1571 (11th Cir.1990) (agency's interpretation of its own regulation entitled to great deference); *Pope,* 998 F.2d at 483 ("In determining whether a rule is a clarification or a change in the law, the intent and interpretation of the promulgating agency as to the effect of the rule is ... given great weight."). According to the Eleventh Circuit, unless the agency's "viewing of the amendment as a clarification is plainly wrong," the court should accept the agency's interpretation. *United States v. Stinson,* 30 F.3d 121, 122 (11th Cir.1994) (discussing amendments to sentencing guidelines promulgated by Sentencing Commission).

■ In this case, the introduction to the revised Staff Commentary evidences the Federal Reserve Board's interpretation of its revised commentary as clarifying, rather than as effecting a substantive change in the law: "The commentary applies and interprets the requirements of Regulation Z. The revisions *clarify* regulatory provisions and provide further guidance on issues of general interest...." 60 Fed.Reg. 16771, 16777 (April 3, 1995) (emphasis added). In discussing its commentary on settlement charges, in particular, the Federal Reserve Board states:

The Board received a substantial number of comments relating to the proposed revision to comment 4(a)–3 on fees charged by third parties. While most commenters believed that the comment helped clarify the treatment of third-party fees generally, the examples of settlement agent charges ... raised a number of questions.

Creditors had expressed concern about some charges imposed by loan-closing agents being imputed to the creditor. Some had indicated that despite the fact that they require the use of a closing agent (and in limited ways the agent acts on behalf of the creditor), in the modern mortgage lending environment, creditors do not have control over certain fees that may be charged to consumers by these entities, particularly where there is no affiliation between the creditor and the third party, as is often the case....

Comment 4(a)–3.... is revised in the final version to clarify the general third-party rule. Upon further analysis, guidance about fees charged by settlement agents in real estate-secured transactions is provided in a separate comment 4(a)–4....

60 Fed.Reg. at 16772. This language makes clear that the Federal Reserve Board views its revised commentary on settlement charges as clarifying the general third-party rule, not as effecting a substantive change in Regulation Z or the guidelines interpreting Regulation Z. *See Cowen,* 70 F.3d at 943 (considering revised Staff Commentary where cause of action arose before effective date and stating that objection based on retroactivity "falls away when the commentary is deemed interpretive rather than legislative"); *Hickey v. Great Western Mortgage Corp.,* 1995 WL 317095, at *3–4 (N.D.Ill. May 23, 1995) (finding that Federal Reserve Board intended its revisions of the Staff Commentary to clarify the general third-party rule and apply Regulation Z to an unsettled issue, not to effect a substantive change in the law). In addition, there is no evidence that the revised commentary is inconsistent with any previous interpretation or with any previous position the Federal Reserve Board has taken with respect to settlement agent charges. Therefore, the revised Staff Com-

mentary does apply to this case, even though the cause of action arose prior to its effective date.

▮▮▮ Even if the revised Staff Commentary could not be applied retroactively, however, the $25 charge at issue in this case is not a finance charge under TILA. That is, even under the former Staff Commentary, the $25 charge for delivery services does not constitute a finance charge. As stated above, Section 226.4(a)–3 of the former Staff Commentary provided that "[c]harges imposed on the consumer by someone other than the creditor for services not required by the creditor are not finance charges, as long as the creditor does not retain the charges." 12 C.F.R. Pt. 226 Supp. I, at § 226.4(a)–3.[4]

The courts in both *Hickey v. Great Western Mortgage Corporation,* 1995 WL 21633 (N.D.Ill. Jan. 14, 1995), and *Cowen v. Bank United of Texas, FSB,* 1995 WL 38978 (N.D.Ill. January 25, 1995), *aff'd,* 70 F.3d 937 (7th Cir.1995), considered the former Staff Commentary and concluded that in order for a courier or delivery services fee to constitute a "finance charge," the creditor had to have required those services. *Hickey,* 1995 WL 21633, at *4 ("A charge imposed by a third party is a finance charge if the creditor required the services for which the third party imposed the fee"); *Cowen,* 1995 WL 38978, at *2 (holding that courier fee did not constitute "finance charge" under Regulation Z where creditor did not require courier services). In *Cowen,* for example, the plaintiffs admitted that the creditor neither received nor retained any part of the expedited

delivery fee. *Cowen,* 1995 WL 38978, at *3. Therefore, the court found that the "ultimate question can be distilled to: Did [the creditor] require [the settlement agent] to use an overnight courier service to send the pay-off checks to the prior mortgagees?" *Id.* After discussing substantial factual evidence that had been presented by both parties concerning the purpose for the expedited delivery services, what the borrowers had been told, what would happen if regular certified mail had been used, and what the closing instructions from the lender to the title company required, the district court in *Cowen* found that the use of expedited delivery was not required by the lender. *Id.* at *5. Therefore, the court held that the fee for such delivery was not a finance charge. *Id.* at *6.

To support her contention that the delivery fee constitutes a "finance charge," plaintiff relies substantially on the Eleventh Circuit's decision in *Rodash v. AIB Mortgage Co.,* 16 F.3d 1142 (11th Cir.1994). In *Rodash,* the court found that the creditor in a mortgage refinancing imposed expedited delivery charges on the borrower to send pay-off funds to the borrower's previous mortgagee and to have the loan documents delivered to the new creditor's assignee. *Id.* at 1147. Therefore, the *Rodash* court held that the delivery fee was a "finance charge" under TILA. *Id.* However, as defendants note, it was the *creditor* in *Rodash* who selected the method of transporting the pay-off funds and the loan documents, not a third party settlement agent. *Id.* at 1148. This distinction is crucial because, as discussed above, under

4. There are two permissible interpretations of this language: one providing that all charges imposed by a third party are finance charges where the creditor requires the third party and one providing that only those charges imposed by the third party that relate to *services* required by the creditor constitute finance charges. Considering the purpose of TILA, the second interpretation seems to be the correct interpretation.

TILA's purpose is to "ensure[] a meaningful disclosure of credit terms to enable consumers to compare readily the various credit terms available in the marketplace." *Rodash v. AIB Mortgage Company,* 16 F.3d 1142, 1145 (11th Cir. 1994). Only with full disclosure of all of the costs of borrowing money will the borrower be able to effectively compare the costs of borrowing among various creditors. The second possi-

ble interpretation of the former commentary seems to serve this purpose more effectively than the first. Under the first interpretation, any costs imposed by a third party are considered "costs of credit," even if the creditor does not require the particular services for which the charge is imposed. Under the second interpretation, on the other hand, only those costs which relate to the specific services required by *the creditor* are considered "costs of credit." It simply makes sense that charges imposed by the third party for services not required by the creditor do not constitute true "costs of credit." Therefore, the second interpretation of the former Staff Commentary is correct, and a charge imposed by a third party is a finance charge only if the creditor required the services for which the third party imposed the fee.

either the former or the revised [5] Staff Commentary to Regulation Z, charges imposed on the borrower by someone other than the creditor for services not required by the creditor do not constitute finance charges. Therefore, just as the district courts in both *Hickey* and *Cowen* found *Rodash* inapplicable to their cases, in which third party settlement agents imposed delivery charges on the plaintiffs for services which the creditors did not require, *Rodash* is similarly inapplicable to this case. *See Hickey*, 1995 WL 317095, at *5; *Cowen*, 1995 WL 38978, at *2; *see also Curtis*, 896 F.Supp. at 1118 (holding *Rodash* inapplicable where a third party imposes a fee, as opposed to the lender).

Plaintiff has submitted insufficient evidence from which a reasonable jury could conclude that the creditor, Highland Bank, required plaintiff to use the delivery services for which the $25 charge was imposed. Rather, the evidence establishes that the $25 charge at issue was imposed by the settlement attorney, Frank Bynum, and that neither the creditor, Highland Bank, nor its assignee, MAW, required the expedited delivery services for which the charge was made. Accordingly, the delivery fee was not a finance charge under TILA, even if the new Staff Commentary is not applied retroactively.[6]

### b. *Assignee Liability*

MAW is also entitled to summary judgment on Count I of plaintiff's Complaint on the alternative ground that under Section 131 of TILA, 15 U.S.C. § 1641, MAW, as the assignee of the creditor, Highland Bank, cannot properly be held liable for the TILA violation plaintiff has alleged. Section 1641 establishes an objective test to determine the liability of an assignee and limits civil actions against an assignee of a creditor to those where the "violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the

assignment was involuntary." 15 U.S.C. § 1641(a); *see also Pollock v. Birmingham Trust Nat'l Bank*, 650 F.2d 807, 811 (5th Cir.1981) (under predecessor to Section 131, "assignee liability ... would normally be determined on the basis of what the plaintiffs submitted, what they thought was assigned to the Bank and what was apparent on its face.").

In this case, no violation is apparent from the face of the TILA disclosure or the HUD–1 Settlement Statement. As discussed above, the determination of whether the challenged expedited delivery fee was a finance charge depends on whether they were imposed by the creditor or were for services required by the creditor. It is impossible to tell from the face of the disclosure document who imposed the fees or required the services. Similarly, the HUD–1 Settlement Statement shows that the challenged expedited delivery charge of $25 was paid to "Fed–X/The Delivery Co." and does not indicate that charge was either imposed by the creditor or was for services required by the creditor. Therefore, Count I fails to state a cause of action under TILA against MAW. *See Johnson v. Fleet Finance, Inc.*, 785 F.Supp. 1003, 1011–12 (S.D.Ga.1992) (dismissing TILA claim against assignee where fee was not retained by creditor, and it was not apparent from face of disclosure statement that creditor required services for which plaintiffs were charged); *see also Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 359 (E.D.Pa. 1994) (granting assignee's motion for summary judgment on TILA claim where violation was not apparent from face of disclosure statement).

### 2. *Notice of Right to Rescind Claim (Count III)*

#### a. *Direct Liability*

In Count III of the Complaint, plaintiff alleges that the form used by Highland Bank

---

**5.** The court notes that the *Rodash* court did not have the benefit of the revised Staff Commentary to Regulation Z, as the revised commentary was not promulgated until April 3, 1995. *See* 60 Fed.Reg. at 16771.

**6.** Because the court finds that the delivery fee is not a finance charge under TILA and Regulation

Z on the grounds that the creditor did not require the expedited delivery services, it need not address defendants' alternative argument that the delivery fee was not a "finance charge" because it was a charge of a type payable in a comparable cash transaction. *See* 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a) (1995).

to notify her of her right to rescind the transaction was deficient under TILA. Relying principally on the Eleventh Circuit's decision in *Rodash*, 16 F.3d at 1142, plaintiff argues that the Notice of Right to Cancel provided to her by Highland Bank did not clearly disclose her right to rescind as required by TILA. In particular, plaintiff argues that while Regulation Z permits the notice of the right to rescind to appear with other information, it is not permissible to include a "certificate of confirmation" on the same document as the notice. In addition, plaintiff contends that the language at the bottom of the page stating that "[a]ll parties who execute Acknowledgment of Receipt must execute Certificate of Confirmation" is misleading.

TILA provides that in connection with any consumer credit transaction secured by the obligor's principal dwelling:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later....

15 U.S.C. § 1635(a). TILA further provides that the creditor shall "clearly and conspicuously disclose" the rights of the obligor under this section and that the creditor shall provide "appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section." *Id.*

In addition to the Act itself, the applicable provision of Regulation Z provides:

> The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
>
> (1) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (2) The consumer's right to rescind the transaction.
>
> (3) How to exercise the right to rescind, with a form for that purpose, designat-

ing the address of the creditor's place of business.

> (4) The effects of rescission, as described in paragraph (d) of this section.
>
> (5) The date the rescission period expires.

12 C.F.R. § 226.23(b) (1995). The Staff Commentary to Regulation Z states that the notice of the right to rescind "must be on a separate piece of paper but may appear with other information such as the itemization of the amount financed." 12 C.F.R. Pt. 226 Supp. I, at § 226.23(b)–2. Finally, the Staff Commentary also states that "[t]he creditor may provide a separate form that the consumer may use to exercise the right of rescission, or that form may be combined with the other rescission disclosures, as illustrated in appendix H." *Id.* § 226.23(b)–3.

 In order to determine whether the notice given to plaintiff was confusing or misleading, the court "must scrutinize the circumstances of the transaction." *Rodash*, 16 F.3d at 1146. To satisfy TILA, the notice of the right to rescind "must be objectively conspicuous and apparent." *Id.* In this case, having carefully examined the notice of the right to cancel provided to plaintiff and having considered the Eleventh Circuit's decision in *Rodash*, the court concludes that it is not confusing or misleading and that the notice of plaintiff's right to rescind was "objectively conspicuous and apparent" on the face of the document. Therefore, the court concludes that the notice does not violate TILA.

In *Rodash*, the creditor provided the borrower with a Notice of the Right to Cancel on the day of closing. *Id.* at 1145. At that same time, the creditor provided, on a separate, single sheet of paper, an acknowledgment that the notice of the right to cancel was received and an "Election Not to Cancel." *Id.* The Election Not to Cancel was a pre-printed waiver of the right to rescind the transaction with a signature line at the bottom. *Id.* In its entirety, the sheet of paper with the acknowledgment and waiver stated:

> The undersigned hereby acknowledges and affirms that on or before January 18, 1991, each of us received two copies of the an-

nexed "Notice of Right to Cancel." Furthermore, the undersigned hereby acknowledges and affirms that each of us have [sic] elected not to cancel the transaction to which the annexed Notice relates. *Id.* at 1145 n. 2. The borrower signed underneath this language. *Id.*

In holding that the notice violated TILA, the *Rodash* court first held that the attempted waiver of the right to rescind was invalid. *Id.* at 1145–46. The court noted that "[t]he purpose of the three-day waiting period is 'to give the consumer the opportunity to reconsider any transaction which would have the serious consequence of encumbering title to his [or her] home.'" *Id.* at 1145 (citation omitted). The *Rodash* court acknowledged that the statute provides for a waiver in the instance of an emergency necessitating an immediate extension of credit, but held that because printed forms may not be used for such an emergency, the pre-printed waiver form used in *Rodash* was invalid. *Id.* at 1145–46.

The *Rodash* court next considered whether the notice of the right to rescind given to the borrower in that case was sufficient notice under TILA. *Id.* at 1146–47. The court gave four reasons for its holding that, considered together, the Notice of Right to Cancel and the Election Not to Cancel did not constitute "clear and conspicuous" disclosure of the three-day right to rescission under TILA. *Id.* at 1146. First, the court found that the presentation of the Election Not to Cancel form on the day of the transaction implied, incorrectly, that waiver is possible within the three-day period in which the borrower has the right to rescind. *Id.* Second, the court found that by having the borrower sign the certificate of non-rescission on the date of the transaction, the creditor suggested that she had foreclosed her right of rescission. *Id.* Third, the court found that the borrower's placing of the acknowledgment and the waiver on the same page and in the same paragraph is confusing because an objective borrower may not understand what she is signing. *Id.* Finally, the court found that handing the borrower a waiver form on the same day as the mortgage and note is misleading, because a borrower could reasonably believe that she had to sign that form, as she must sign other forms, to complete the mortgage transaction. *Id.*

 In this case, plaintiff is correct in noting several similarities between the documents used in this case and those held invalid in *Rodash.* However, the distinctions between the two transactions are crucial and require a holding that the notice of plaintiff's right to rescind the transaction provided by Highland Bank did not violate TILA.

Although plaintiff was presented with the notice of her right to rescind, the acknowledgment that she had received the notice, and the certificate of confirmation on the day of her closing and on the same sheet of paper, the language of the notice and the instructions to the borrower were not confusing or misleading. Rather, the borrower's right to rescind the transaction is both conspicuous and apparent on the face of the document. As emphasized by the court in *Rodash,* the court must "scrutinize the circumstances" of *this* transaction to determine whether the notice of the right to rescind was "conspicuous and apparent." *See id.* In this case, the notice form is entitled in large, bold print "NOTICE OF RIGHT TO CANCEL." Under the title, the form clearly describes the borrower's right to cancel the transaction within three business days and instructs the borrower about how to cancel the transaction should she so desire. The form then provides the cancellation language, "I WISH TO CANCEL;" space for the borrower's signature and date of signature; and the address of the bank so that the borrower knows where to send the cancellation. The language of this section of the document is clear. In fact, it is difficult for the court to imagine language that would more clearly describe the borrower's rights. It is true that the Acknowledgment of Receipt appears directly below this notice of right to rescind. However, the Acknowledgment is set apart from the Notice in capital, bold letters and merely asks the borrower to acknowledge that she received the Notice on February 28, 1994, the date of the closing. There is no suggestion, as in *Rodash,* that the acknowl-

edgment serves as a waiver of the right to rescind.

Finally, the Certificate of Confirmation appears below the Acknowledgment and, like the Acknowledgment, is set apart in bold, capital letters and provides its own signature lines. The Certificate states clearly in the first sentence that "[m]ore than 3 days have elapsed since the undersigned received the NOTICE OF RIGHT TO CANCEL." (*See* Appendix). In addition, this section of the form is dated March 4, 1994. Therefore, unlike the election not to cancel in *Rodash,* the Certificate of Confirmation used in this case does not purport to decline rescission "at the outset," but rather provides for rescission only after the three-day grace period has elapsed.

The only sentence on the entire document that is even arguably misleading is the final sentence which states: "NOTE: All parties who execute Acknowledgment of Receipt must execute Certificate of Confirmation." As plaintiff points out, this sentence may serve to confuse a borrower by suggesting that he or she must sign both the Acknowledgment and the Certificate of Confirmation, which is not true if the borrower decides to rescind the transaction under the first section of the form. However, viewed in the context of the entire Notice of Right to Cancel, this sentence is not misleading. As stated above, the Notice is divided into three distinct sections with all of the language below each subheading pertaining to that section only. This note is located below the "CERTIFICATE OF CONFIRMATION" subheading and logically pertains only to that section. Thus, only a borrower who has decided not to rescind the transaction under the first section of the Notice and, therefore, completes the Certificate even considers the note. The clear purpose of the note is to inform the borrower that in order to complete the transaction now that she has elected not to rescind, she must sign both the acknowledgment and the certificate. While it might have been clearer if Highland Bank had explained the note in more detail, this language alone does not make the Notice of Right to Cancel unclear or inconspicuous.

Despite the fact that the Notice, the Acknowledgment, and the Certificate appear on the same page and were presented to plaintiff on the day of the closing, plaintiff's right to rescind the transaction was clearly and conspicuously communicated to her through the document. Unlike the documents in *Rodash,* this document in no way implies that rescission is possible before the three-day grace period has elapsed; the language is sufficiently clear such that an objective borrower would understand what she is signing; and the presentation of each section is distinct, preventing an objective borrower from believing that she had to sign every section in order to complete the mortgage transaction. *See Rodash,* 16 F.3d at 1146. In fact, because each of these forms is located on the same page and because the Notice clearly explains when a borrower should sign which section and why, this method of presenting the borrower's options may be less likely to confuse the borrower than if she had been handed three separate forms and was expected to discern the relationship among the forms for herself.

The Notice of Right to Cancel provided to plaintiff by Highland Bank constitutes a "clear and conspicuous" disclosure of the three-day right to rescission under TILA. The Notice includes all of the information required under Regulation Z, *see* 12 C.F.R. § 226.23(b), and the Notice is provided on a separate document from other disclosures required under TILA, as the Staff Commentary mandates, *see* 12 C.F.R. Pt. 226 Supp. I, at § 226.23(b)–2. Because the notice of plaintiff's right to rescind the transaction complies with TILA as a matter of law, defendants' motions for summary judgment as to Count III of the Complaint are due to be granted.

b. *Assignee Liability*

 As under Count I, MAW is also entitled to summary judgment on Count III of plaintiff's Complaint on the ground that MAW cannot be held liable under 15 U.S.C. § 1641 as Highland Bank's assignee. As stated above, Section 1641 establishes an objective test to determine the liability of an assignee and limits civil actions against an assignee of a creditor to those where the

"violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment is involuntary." 15 U.S.C. § 1641(a). At the time of plaintiff's closing in February of 1994,[7] TILA provided:

[A] violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

*Id.*

In this case, plaintiff's contention that Highland Bank's notice of right to rescind violated TILA is predicated almost entirely on *Rodash.*[8] However, the *Rodash* decision was not issued until March 21, 1994, almost a month after plaintiff's loan closed and was assigned to MAW on February 28, 1994. Therefore, even if Highland Bank's notice of right to rescind violated TILA under *Rodash,* that violation could not have been "apparent" to MAW on the face of any "document assigned" to it on February 28th. Because the alleged violation of TILA under Count III of plaintiff's Complaint was not apparent on the face of the documents assigned to MAW, MAW's motion for summary judgment as to Count III is due to be granted.

## B. *Restitution (Count II)*

▮ In Count II of the Complaint, plaintiff appears to allege that she is entitled to restitution of the expedited delivery charges.[9] Plaintiff's only basis for this claim is that the charges were not included in the "finance charge" identified by her TILA disclosure statement. As demonstrated above, however, plaintiff has failed to state a claim for violation of the disclosure provisions of TILA. Plaintiff, therefore, cannot rely on any alleged violation of TILA as the basis for her restitution claim.

Nor has plaintiff any other basis upon which to claim the equitable *remedy* of restitution. *See State of New York v. SCA Services, Inc.,* 761 F.Supp. 14, 16 (S.D.N.Y.1991) (restitution is a remedy, not a separate basis for liability). At the time she closed her loan, plaintiff knew of the charge of which she complains. That charge was discussed with her at the closing by Bynum, and set forth on line 1303 of the HUD-1 Settlement Statement she received at the closing. Plaintiff does not allege that the expedited delivery services were not performed, or that the fees for those services were otherwise improperly obtained. Plaintiff has no cause of action, in law or equity, that would require restitution of the expedited delivery charge. Accordingly, defendants are also entitled to summary judgment on plaintiff's restitution claim.

## CONCLUSION

Plaintiff's evidence raises no genuine issues of material fact regarding her claims that defendants violated TILA in the context of her mortgage refinancing transaction. Accordingly, defendants' motions for summary

---

7. On September 30, 1995, the Truth In Lending Act Amendments of 1995, Pub.L. No. 104–29, 109 Stat. 271 (1995), were signed into law by the President. The Amendments redefine "violation apparent on the face of the disclosure" more narrowly than the Act did before the Amendments. *Compare* 15 U.S.C. § 1641(a) *with* Pub.L. No. 104–29, 109 Stat. 271 (1995). In addition, the Amendments limit the right of a plaintiff to obtain rescission on the basis of the written notice used by the creditor. Pub.L. No. 104–29, 109 Stat. 271 (1995). Because plaintiff's Complaint was filed prior to the enactment of the Amendments and because the court finds that summary judgment is due to be granted under the Act as it existed prior to the Amendments, it will not address defendants' arguments on the basis of these Amendments.

8. The court notes that the *Rodash* decision created an enormous potential for liability, and in response Congress declared a moratorium on TILA class action lawsuits based upon errors in disclosure practices relating to mortgage refinancing. *See Curtis v. Secor Bank,* 896 F.Supp. 1115, 1120 (M.D.Ala.1995). That moratorium ended on October 1, 1995. *Id.*

9. Specifically, Count II alleges that Highland Bank "obtained finance charges which it should not be permitted to retain in equity and good conscience" and that MAW "likewise received the benefit of the improper charges imposed on plaintiff," and seeks "appropriate damages."

judgment with respect to plaintiff's claims are due to be granted.