Yvanne **WHITE** and Jesse White, Jr., et al

*v.*

**DIAMOND MOTORS, INC. d/b/a DIAMOND NISSAN, et al.**

**Civil Action No. 95–1933–B–M2.**

United States District Court, M.D. Louisiana.

Feb. 20, 1997.

---

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Charles E. Petit, Daniel P. Lindsey, Edelman & Combs, Chicago, IL, O. Randolph Bragg, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, for Yvanne White.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Charles E. Petit, Daniel P. Lindsey, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, for Jesse E. White, Jr.

William Marvin Hall. Jr., Joseph L. Spilman, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for Diamond Motors, Inc.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, Anthony Joseph Rollo, Jr., David S. Willenzik, McGlinchey Stafford Lang, New Orleans, for Nissan Motor Acceptance Corp.

Walter K. Jamison, III, Marjorie Briley Breaux, Jamison & Philipp, Lafayette, for Clarendon National Ins. Co.

Mark Cameron Andrus, Andrus & Gresham, APLC, Lafayette, John E. McElligott, Jr., Jhan C. Beaullieu, Davidson, Meaux, Sonnier & McElligott, Lafayette, for American Eagle Ins. Co.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT FILED BY DEFENDANTS

POLOZOLA, District Judge.

This matter is before the Court on four motions for summary judgment filed by Diamond Motors, Inc. d/b/a Diamond Nissan ("Diamond"), Nissan Motor Acceptance Corporation ("NMAC"), Clarendon National Insurance Company ("Clarendon National") and American Eagle Insurance Company ("American Eagle"). This suit requires the Court to determine whether a $100 fee charged by Diamond is a "finance charge," or instead meets the "comparable cash transaction" exception to the definition of "finance charge" under the Truth in Lending Act (TILA).[1] For reasons which follow, the four motions for summary judgment are granted.

### OVERVIEW

This suit[2] was filed by plaintiffs, Yvanne White and Jesse E. White, Jr. (the "Whites"), under TILA, and Federal Reserve Board Regulation Z[3] promulgated pursuant to TILA. The suit arises from the purchase of an automobile by the Whites from Diamond, the dealership from which the Whites financed the purchase of their automobile. Also named as defendants in this suit are NMAC, which subsequently purchased the Whites' consumer credit sales contract from

---

1. 15 U.S.C. § 1601, et seq.

2. The plaintiffs seek to file this suit as a class action. The proposed class action has not yet been certified by the Court. since the Court has granted defendants' motions for summary judgment, the class action issue is now moot.

3. 12 C.F.R. § 226, et seq.

Diamond on an assignee basis; and Diamond's insurers, Clarendon National and American Eagle.

## FACTS AND PROCEDURAL HISTORY

On November 19, 1994, the Whites purchased a 1994 Nissan Altima from Diamond which was financed on a credit sale basis. Because Diamond was the originating creditor[4] under the Whites' consumer credit sale contract, and as the originating creditor, Diamond was solely responsible to make the required TILA disclosures.[5]

The Truth in Lending disclosure statement prepared by Diamond disclosed an amount financed of $21,507.90, a "finance charge" of $6,696.10, an annual percentage rate of 11.90%, and a security interest in the Whites' automobile. Included as part of the $21,507.90 amount financed was a $100.00 charge for "License." It is undisputed that the amount of the license fee actually paid by Diamond to the State of Louisiana was $38.33. The Whites contend that the balance of $61.67 should have been added to the "finance charge" of $8,696.10, and that the "finance charge" was thereby understated by $61.67. Diamond terms the $100.00 fee as a "flat fee" designed to cover a bundle of services associated with licensing and titling the vehicle, including title and license fees paid to the State of Louisiana, fees for notarizing various documents, and documentation fees retained by Diamond.

Diamond assigned the Whites' consumer credit sales contract to NMAC, which became an "assignee" under the transaction.

As a voluntary subsequent assignee, NMAC may only be held derivatively liable for those Truth in Lending disclosure violations committed by Diamond that are apparent on the face of the Whites' disclosure statement.[6] Defendants filed this motion for summary judgment denying liability.

## SUMMARY JUDGMENT

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[8] In opposing the granting of summary judgment, the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings, but by its own affidavits, depositions, answers to interrogatories, or admissions, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[9] When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[10]

Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case.[11] The moving party is not

4. See 15 U.S.C. § 1602(f).

5. According to 15 U.S.C. § 1638(a), the originating dealer/creditor under a consumer credit sale is obligated to make Truth in Lending disclosures.

6. 15 U.S.C. § 1641(a); also see Smith v. Highland Bank, 915 F.Supp. 281, 290 (N.D.Ala.1996).

7. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Cormier v. Pennzoil, 969 F.2d 1559 (5th Cir.1992), Fontenot v. Upjohn Co., 780 F.2d 1190 (5th Cir.1986).

8. Cormier, 969 F.2d at 1560.

9. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Reese v. Anderson, 926 F.2d 494, 498 (5th Cir.1991); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir.1990).

10. Matsushita, 475 U.S. at 586, 106 S.Ct. at 1356; Cormier, 969 F.2d at 1560.

11. Celotex, 477 U.S. at 325, 106 S.Ct. at 2554; Lavespere, 910 F.2d at 178; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir.1989); Slaughter v. Allstate Ins. Co., 803 F.2d 857, 860 (5th Cir.1986).

required to produce evidence to negate the non-moving party's claims.[12] The non-moving party must then come forward with evidence which establishes each element for which that party bears the burden of proof at trial.[13] otherwise, no genuine issue as to any material fact exists, since a complete failure of proof concerning one element of the non-moving party's case necessarily renders all other facts immaterial, and the moving party is entitled to summary judgment.[14]

## CONCLUSIONS OF LAW

### 1. *Alleged Violations of TILA*

The Whites allege in their second amended complaint that the disclosure statement issued in conjunction with this consumer credit transaction violated the requirements of TILA and Regulation Z in three respects.

First, the Whites contend that Diamond violated 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d) by failing to include the $61.67 (the difference between the $38.33 actually paid for the license and the $100.00 charged as a license fee) in the "finance charge" as required by 15 U.S.C. § 1605 and 12 C.F.R. § 226.4. Second, the Whites allege that Diamond overstated the amount financed in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b) by including and disclosing in the disclosed Amount Financed (in the Itemization of Amount Financed portion of the Whites' consumer credit sales contract) a license fee of $100.00, when only $38.33 of the $100.00 fee was actually paid to the State as a license fee. Finally, the Whites assert that because Diamond understated the disclosed amount of the "finance charge," and overstated the disclosed amount of the Amount Financed, Diamond necessarily underdisclosed the Annual Percentage Rate ("APR")

for the transaction. The Whites contend the underdisclosure of the APR, beyond the tolerance permitted under 12 C.F.R. § 226.22(a)(2), is a violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

### 2. *Liability of the Parties Under TILA*

■ To properly resolve the pending motions for summary judgment, the Court must determine whether the $61.67 amount (the difference between the $38.33 actually paid for the license and the $100.00 charged as a license fee) should be classified as a "finance charge." "Finance charge" is defined by TILA as follows:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a *comparable cash transaction.*[15] (Emphasis added.)

Regulation Z includes a similar definition of "finance charge:"

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a *comparable cash transaction.*[16]

The "comparable cash transaction" referred to in the definition of "finance charge" is explained as follows:

---

12. *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir.1990); *Lavespere*, 910 F.2d at 178; *Teply v. Mobil Oil Corp.*, 859 F.2d 375, 379 (5th Cir. 1988).

13. *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993). From this evidence, all reasonable inferences are drawn in favor of the non-moving party. *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir.1993); *McGregor v. Louisiana State Univ. Bd. of Supervi-*

sors, 3 F.3d 850, 855 (5th Cir.1993); *Harbor Ins. Co. v. Urban Constr. Co.*, 990 F.2d 195, 199 (5th Cir.1993).

14. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552; *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 872 (5th Cir.1991).

15. 15 U.S.C. § 1605(a).

16. 12 C.F.R. § 226.4(a).

Charges imposed uniformly in cash and credit transactions are not finance charges. In determining whether an item is a finance charge, the creditor should compare the credit transaction in question with a similar cash transaction. A creditor financing the sale of property or services may compare charges with those payable in a similar cash transaction by the seller of the property or service.

I. For example the following items are not finance charges:

A. Taxes, license fees, or registration fees paid by both cash and credit customers.... [17]

█ "This exception appears to make it clear that a finance charge is a cost of credit. Charges that are imposed uniformly in cash and credit transactions are not properly considered a cost of extending credit to the consumer." [18] In other words, if the payment of a fee is "incident to the extension' of credit because the Bank would not extend credit otherwise," then the fee is not of a type payable in a comparable cash transaction.[19] However, if the charge is one payable in both cash and credit transactions, the charge is not deemed a "finance charge" under TILA.

NMAC argues that the $61.67 amount is not a "finance charge" because the $100.00 license fee meets the comparable cash transaction exception to the definition of "finance charge." Specifically, NMAC contends that it is Diamond's policy and practice to charge a $100.00 fee to both cash and credit customers when the customers elect to have Diamond obtain a motor vehicle certificate of title and license plate for the customer. If the customer elects to obtain title and license on their own, Diamond does not charge the $100.00 fee.[20]

The Whites allege the $100.00 fee is not charged in all cash and credit transactions. The Whites argue that if they had financed their vehicle through an outside bank that provided them cash to purchase the vehicle in return for a security interest in the vehicle, and that bank also handled the application for title and license, then Diamond would not have charged the $100.00 fee. Since the outside bank financed the vehicle, the transaction is a cash transaction to Diamond, and Diamond would not have charged the $100.00 fee. On this basis, the Whites assert the $100.00 fee is not charged in all cash and credit transactions because in this particular cash transaction, where the bank processes the title and license, the $100 fee would not be charged.

The Whites' argument is unconvincing. To qualify for the comparable cash transaction exception, the $100.00 license fee must be a type payable in both cash and credit transactions. The fee cannot be a requirement for the extension of credit by Diamond. The evidence in this case reveals that both in cash and credit sales, if the customer elects to have Diamond handle application for title and license, Diamond charges the $100.00 fee. Therefore, the $100.00 fee is not a required precursor for the extension of credit. Thus, the Court finds the $100.00 fee, which Diamond charged to the Whites in the credit transaction, is also charged in comparable cash transactions. Therefore, none of the $100.00 fee (including the disputed $61.67) is a "finance charge" as defined by TILA.

## CONCLUSION

The Court concludes the $100.00 license fee is charged in comparable cash and credit transactions. Since the $100.00 license fee meets the comparable cash transaction exception to the definition of "finance charge," the disputed $61.67 of the $100.00 license fee is not a "finance charge" as defined by 15 U.S.C. § 1605(a). As noted above, the Whites allege three separate violations of

---

17. Official Staff Commentary on Regulation Z, § 226.4 at 18, as revised effective April 1, 1995.

18. *Hickey v. Great Western Mtg. Corp.*, 1995 WL 21633 at 7 (N.D.Ill. Jan.14, 1995).

19. *First Acadiana Bank v. FDIC*, 833 F.2d 548, 550 (5th Cir.1987); also see *McGee v. Kerr–Hick-*

*man Chrysler Plymouth*, 93 F.3d 380, 385 (7th Cir.1996).

20. See Deposition of Gillis W. Leger, General Manager of Diamond, at 26–27; also see "Second Affidavit of Gillis W. Leger" dated October 31, 1996.

TILA. Since the three alleged violations of TILA are each dependent upon the $61.67 being labeled a "finance charge," and since the Court has concluded the amount is not a "finance charge, Diamond is entitled to a judgment as a matter of law."

In addition, the "resolution of [the] question [of Diamond's liability under TILA] renders moot the question of [NMAC's] TILA liability as assignee of the sale contract." [21] Therefore, since Diamond is not liable under TILA, NMAC "is off the hook as well," [22] and NMAC is also entitled to summary judgment.

Finally, for the reasons stated above, the motions for summary judgment filed by Clarendon National and American Eagle, as Diamond's insurers, are also granted.

Therefore:

IT IS ORDERED the four motions for summary judgment filed by Diamond, NMAC, Clarendon National, and American Eagle be and each are hereby GRANTED. It is ordered that plaintiffs' suit be dismissed with prejudice.

---

**21.** *McGee*, 93 F.3d at 385 n. 9.

**22.** *McGee*, 93 F.3d at 385 n. 9.