**Wilmore GREEN, III and Marsha W. Green, et al.**

v.

**LEVIS MOTORS, INC., et al.**

**No. Civ.A. 96–508–B–M1.**

United States District Court,
M.D. Louisiana.

July 25, 1997.

Daniel A. Edelman, Charles E. Petit, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for plaintiffs.

Robert Lee Atkinson, James Rodney Chastain, Jr., Christine Lipsey, Van R. Mayhall, Jr., Breazeale, Sachse & Wilson, Baton Rouge, LA, for Levis Motors, Inc., Robert J. Levis, John Fos, III.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, LA, Anthony Joseph Rollo, Jr., Michael H. Rubin, Lauren L. Zimmermann, McGlinchey Stafford Lang, New Orleans, LA, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, for Hancock Bank of Louisiana.

## RULING ON MOTION FOR SUMMARY JUDGMENT FILED BY HANCOCK BANK OF LOUISIANA

POLOZOLA, District Judge.

Wilmore and Marsha Green have filed a complaint against Hancock Bank of Louisiana ("Hancock") for violations of the Truth in Lending Act ("TILA"),[1] and for equitable restitution.[2] In response to the Greens's complaint, Hancock has filed a motion for summary judgment. For reasons which follow, Hancock's motion for summary judgment is GRANTED.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment."[3] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that

---

1. 15 U.S.C. § 1601, et seq.

2. The Greens filed a motion to certify a class action lawsuit, but as of the date of this ruling, the Court has not ruled on this motion.

3. Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

party will bear the burden of proof at trial."[4] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[5] If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[6]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[7] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[8] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[9] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[11]

When affidavits are used to support or oppose a motion for summary judgment, the affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."[12] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment.[13] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact.[14]

## ANALYSIS

### I.  TILA Claims

The Greens have alleged several violations of TILA in their complaint.  The following is an analysis of these claims.

#### (I)(A)  Effects of Alleged Understatement of "Finance Charge"

These claims center around the characterization of a $40 "license fee" charged by Levis Motors, Inc., d/b/a Levis Mitsubishi ("Levis") The Greens claim the "license fee" was actually only $22, and that Levis violated TILA by including the difference of $18 in the "amount financed,"[15] instead of the "finance charge."[16]  The following is a sum-

---

4.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 2552, 91 L.Ed.2d 265 (1986).  *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

5.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25, 106 S.Ct. at 2553).

6.  *Little*, 37 F.3d at 1075.

7.  *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

8.  *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

9.  *Wallace*, 80 F.3d at 1047. *Accord, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

10.  *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), as revised on denial of rehearing, 70 F.3d 26 (5th Cir.1995).

11.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

12.  Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993).

13.  *Richardson v. Oldham,·12 F.3d 1373, 1378–79 (5th Cir.1994).

14.  *McCallum Highlands v. Washington Capital Dus*, 66 F.3d at 92; *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992).

15.  *See* 15 U.S.C. § 1638(a)(2) for definition of "amount financed."

16.  *See* 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a) for definition of "finance charge."

mary of the violations of TILA the Greens contend result from the alleged misclassification of the $18 difference:

1.  Levis understated the "finance charge" disclosed to the Greens by $18 in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d).

2.  By understating the "finance charge," Levis necessarily overstated the "amount financed" disclosed to the Greens by $18 in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

3.  Because the "finance charge" and the "amount financed" were understated and overstated, respectively, Levis necessarily understated the "annual percentage rate" disclosed to the Greens in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

■ The Greens assert that Hancock is secondarily liable as an "assignee" under TILA. Levis is the "assignor" who assigns credit installment contracts to Hancock, and is primarily liable for the above alleged TILA violations. For the reasons set forth in *White v. Diamond Motors, Inc.*,[17] the Court finds the $40 fee charged by Levis meets the "comparable cash transaction" exception and, therefore, is not a "finance charge." Since the $40 "license fee" is not a "finance charge" as defined by TILA, the "finance charge," the "amount financed," and the "annual percentage rate" were accurately disclosed in

accordance with TILA. The resolution of Levis's primary liability under TILA renders moot the question of Hancock's TILA liability as assignee of the retail installment contract between the Greens and Levis.[18] Therefore, since Levis is not liable under TILA, Hancock "is off the hook as well," [19] and Hancock is entitled to summary judgment on these three TILA claims.[20]

### (I)(B) *Inaccurate Disclosure of "License Fee"*

### (I)(B)(1) *Discussion of the Merits*

■ The Greens assert an additional violation of TILA arguing the $40 "license fee" is an inaccurate disclosure, in violation of 15 U.S.C. § 1638(a)(2)(B)(iii),[21] 12 C.F.R. § 226.18(c)(1)(iii),[22] and 12 C.F.R. § 226.18(c)(2),[23] because the "license fee" was actually $22. The difference of $18 retained by Levis is termed an "upcharge" under TILA. The issues before the Court are whether Levis must disclose the fact that an upcharge is included in the "license fee," whether Levis must disclose the specific amount of the upcharge of $18, whether Levis must disclose both, or whether Levis is required to disclose neither. Under the facts of this case, Levis has not disclosed either that an upcharge was retained by Levis or the specific amount of the upcharge.

Before the Court may discuss whether Hancock is secondarily liable for a violation

---

**17.** 962 F.Supp. 867 (M.D.La.1997).

**18.** *See McGee v. Kerr–Hickman Chrysler Plymouth*, 93 F.3d 380, 385 n. 9 (7th Cir.1996).

**19.** *McGee*, 93 F.3d at 385 n. 9.

**20.** For a full discussion of the above legal principles, see *White v. Diamond Motors, Inc.*, 962 F.Supp. 867 (M.D.La.1997).

**21.** 15 U.S.C. § 1638(a)(2)(B)(iii) provides as follows:

In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, *upon a written request*, a written itemization of the amount financed.... Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount fi-

nanced" means a disclosure of the following items, to the extent applicable: ... (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person.... (Emphasis added.)

**22.** 12 C.F.R. § 226.18(c)(1)(iii) states that "[f]or each transaction, the creditor shall disclose ... [a] separate written itemization of the amount financed, including ... [a]ny amounts paid to other persons by the creditor on the consumer's behalf [, and] [t]he creditor shall identify those persons."

**23.** Similar to 15 U.S.C. § 1638(a)(2)(B), 12 C.F.R. 226.18(c)(2) provides that the creditor need not disclose a separate written itemization of the amount financed if the creditor discloses to the consumer that the consumer has the right to obtain this separate written itemization, and the consumer declines to exercise this right.

of this provision of TILA, the Court must first discuss whether Levis is primarily liable. In analyzing Levis's responsibilities under 15 U.S.C. § 1638(a)(2)(B)(iii), the Court must look to the wording of the statute, the regulations, the Official Staff Commentary of the Federal Reserve Board ("FRB") and the Federal Register. The Court will begin with an analysis of 15 U.S.C. § 1638(a)(2)(B)(iii) which requires the creditor to provide a statement to the consumer of the consumer's right to obtain an "itemization of the amount financed." If the consumer so chooses, the creditor must disclose "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person."[24] The applicable regulations merely restate the requirements set forth in the statute.[25]

Based on the statute and regulations, it seems clear that Levis (the creditor) must disclose that $22 was paid to the State of Louisiana for "license fees." However, FRB *Official Staff Commentary on Regulation z Truth in Lending*, § 226.18, ¶ 18(c)(1)(iii)–2 (April 1, 1996) (the "amended commentary") complicates the above conclusion. In order to understand the amended commentary, both the commentary, as it was originally stated (the "original commentary") and the FRB's proffered reasons for changing the original commentary must be analyzed. The original commentary reads as follows:

> A creditor that offers an item for sale in both cash and credit transactions sometimes adds an amount (often referred to as an 'upcharge') to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transaction, and retains that amount. At its option, the creditor may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually

paid to or retained by the appropriate parties.[26]

Thus, under the original commentary, the FRB gave the creditor the option of either listing the total amount of the fee charged as an "amount paid to others" (i.e., list the total $40 "license fee" as an amount paid to public officials), or the creditor may choose to disclose both the amount of the upcharge (in this case—$18) and the amount of the actual "license fee" (in this case—$22) separately.

The original commentary was amended based on comments received from the general public. In explaining the reasons for amending the original commentary, the FRB states as follows:

> For the most part, commenters agreed with the Board's proposed treatment. As proposed, the comment [originally] stated that a creditor could include in the 'amount paid to others,' any amount retained by the creditor without itemizing or noting this fact. Concern is raised about the appropriateness of such treatment under the TILA where a substantial portion of a fee categorized as 'amounts paid to others,' is in fact retained by the creditor. Accordingly, [the comment was changed, and] a sentence has been added to clarify that given the flexibility in itemizing the amount financed, creditors may reflect that they have retained a portion of the 'amount paid to others' rather than disclosing the specific amount retained.[27]

In summary, the FRB explained its reason for amending the original commentary was due to its "concern" about whether it was appropriate to sanction the practice of charging an upcharge to consumers without disclosing this fact. The FRB further explained the original commentary was changed to provide that, instead of disclosing the specific amount of the upcharge, the creditor may disclose only the fact that there is an upcharge.

Thus, the FRB rewrote the original commentary as follows to reflect these concerns:

---

24. 15 U.S.C. § 1638(a)(2)(B)(iii).

25. *See* 12 C.F.R. § 226.18(c)(1)(iii) and 12 C.F.R. § 226.18(c)(2).

26. Truth in Lending, 60 Fed.Reg. 62785 (Dec. 7, 1995).

27. Truth in Lending, 61 Fed.Reg. 14952, 14954 (April 4, 1996).

*Charges added to amounts paid to others.* A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to section 226.18(c)), the creditor in such cases *may* reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor *could* add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)." (Emphasis added.) [28]

In summary, the amended commentary states, if the creditor adds an upcharge to an amount paid to a third party, the creditor *may* disclose the fact that the creditor has retained an upcharge, instead of disclosing the specific amount of the upcharge.

Summarizing the above, the statute (15 U.S.C. § 1638(a)(2)(B)(iii)) states a creditor must disclose each amount paid to third persons on the consumer's behalf, and the third persons must be identified or referenced. In more fully explaining what this specific statutory provision requires, the FRB proposed, in its original commentary, that, if the creditor charges an upcharge, the creditor need not disclose the fact that an upcharge was retained by the creditor.[29] The FRB elaborated that it changed the original commentary due to its concern about the appropriateness of creditors being allowed to charge an upcharge without disclosing this fact to the general public.[30] Accordingly, the original commentary was changed to take away the option of disclosing that the creditor has retained an upcharge, and instead, gave the creditor the choice of whether to disclose the specific amount of the upcharge.[31] Thus, the Court agrees with the characterization of the law as set forth in *Alexander v. Continental Motor Werks, Inc.*[32] The Alexander court states as follows:

> [r]ead in light of the FRB's supplementary comments [at Truth in Lending, 61 Fed. Reg. 14952, 14954 (April 4, 1996)] and in conjunction with the specific requirement set forth in Regulation Z [and the statute] that the creditor 'shall disclose ... a written itemization of the amount financed including ... (iii) any amounts paid to other persons by the creditor on the consumer's behalf,' an examination of the (amended) commentary reveals an intent not to relieve the dealer of the obligation to disclose the existence of an upcharge, but rather to relieve the dealer only of the obligation to disclose the amount of the upcharge.[33]

The Court finds further support for its interpretation of the law in that "[s]uch an interpretation, which benefits both consumers (by putting them on notice of the existence of an upcharge) and creditors (by preventing disclosure of actual cost), is wholly consistent with the fundamental proposition that any TILA disclosure must be accurate."[34] As stated by the court in *Alexander*,

> [t]he interpretation propounded by the defendant, which gives the creditor the option of accurately disclosing its retention of a portion of the purchase price of the [license] or of inaccurately claiming that the entire amount of the purchase price of

---

**28.** FRB *Official Staff Commentary on Regulation Z Truth in Lending*, § 226.18, ¶ 18(c)(1)(iii)–2 (April 1, 1996) (the "amended commentary").

**29.** *See* Truth in Lending, 60 Fed.Reg. 62785 (Dec. 7, 1995) ("original commentary").

**30.** *See* Truth in Lending, 61 Fed.Reg. 14952, 14954 (April 4, 1996).

**31.** See FRB *Official Staff Commentary on Regulation z Truth in Lending*, § 226.18, ¶ 18(c)(1)(iii)–2 (April 1, 1996) ("amended commentary").

**32.** *Alexander v. Continental Motor Werks, Inc.*, 933 F.Supp. 715 (N.D.Ill.1996) (Kocoras, J.).

**33.** *Alexander*, 933 F.Supp. at 718.

**34.** *Alexander*, 933 F.Supp. at 718; *See Fairley v. Turan–Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir.1995) ("The purpose of TILA is to protect the consumer from inaccurate and unfair credit practices, and to 'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.' 15 U.S.C. § 1601(a).")

the [license] is being paid to a third party, would be to effectively authorize a deliberate, known misrepresentation under TILA.[35]

Prior to the recent Seventh Circuit Court of Appeals decision in *Gibson v. Bob Watson Chevrolet–Geo, Inc.*,[36] there was a split in the district courts of the Seventh Circuit on the above issue.[37] Recently, the Seventh Circuit in *Gibson* reached the same conclusion as this Court by finding that "the only sensible reading of the (amended) commentary is as authorizing the dealer to disclose only the fact that he is retaining a portion of the [up]charge, rather than the exact amount of the retention."[38]

Having set forth the principles of law which must be applied herein, the Court now turns to an analysis of the facts of this case. In the retail installment contract (between the Greens and Levis) assigned to Hancock, Levis discloses to the Greens that $40 is being paid to public officials for "license fees."[39] Levis does not disclose that it is retaining an upcharge of $18. Therefore, Levis may be liable for a violation of 15 U.S.C. § 1638(a)(2)(B)(iii) of TILA.

Thus, based solely on the merits of this claim, the Court should deny Hancock's motion for summary judgment. However, even if Levis (as the creditor) may be liable for this alleged violation of TILA, Hancock is not liable unless the Court finds Hancock is liable as an assignee under 15 U.S.C. § 1641(a), or unless the Court finds the language in the retail installment contract (between the Greens and Levis) assigned to Hancock subjects Hancock to liability. The Court now turns to a discussion of Hancock's potential responsibility for the alleged inaccurate disclosure.

(I)(B)(2) *Discussion of Hancock's Liability as an Assignee*

■ The Greens assert Hancock is liable under TILA for the failure to disclose the "license fee" included an upcharge based on two theories. First, the Greens contend Hancock is liable under 15 U.S.C. § 1641(a) as an assignee of the retail installment contract. Second, the Greens assert the language in the retail installment contract assigned to Hancock subjects Hancock to TILA liability because it includes a Federal Trade Commission Holder in Due Course Notice ("FTC Holder Notice") For reasons given in the Court's "Ruling on Motion for Summary Judgment Filed by Chrysler Financial Corp." in *Turner v. II Diamond Motors, Inc.*, CA No. 96–336–B, the Court holds Hancock is not liable for the failure to disclose the "upcharge" under 15 U.S.C. § 1641(a) of TILA, and the Court finds the language in the FTC Holder Notice does not subject Hancock to liability under TILA.

II. *Equitable Restitution Claims*

■ In their complaint, the Greens assert a claim for "unjust enrichment" for the amount of the $18 upcharge built into the "license fee." The five requirements for a showing of "unjust enrichment" are: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and the resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other reme-

---

35. *Alexander*, 933 F.Supp. at 718.

36. 112 F.3d 283 (7th Cir.1997).

37. The courts agreeing with this Court's decision were as follows: *Ritter v. Durand Chevrolet, Inc.*, 932 F.Supp. 32 (D.Mass.1996); *Cirone–Shadow v. Union Nissan of Waukegan*, 955 F.Supp. 938 (N.D.Ill. 1997) (Kocoras, J.); *McPhan v. Geo R. Gibson Chevrolet*, 1996 WL 685449 (N.D.Ill. Nov.25, 1996) (Nordberg, J.); *Lindsey v. Ed Johnson Oldsmobile*, 1996 WL 411336 (N.D.Ill. July 19, 1996) (Kocoras, J.); *Bambilla v. Evanston Nissan, Inc.*, 1996 WL 284954 (N.D.Ill. May 21, 1996) (Leinenweber, J.).

The courts holding opposite of this Court were as follows: *Taylor v. Quality Hyundai, Inc.*, 932 F.Supp. 218 (N.D.Ill.1996) (Norgle, J.); *El–Mohammed v. Old Orchard Chevrolet–Geo, Inc.*, 1997 WL 106243 (N.D.Ill. Feb.10, 1997) (Holderman, J.); *Johnson v. Rohr–Ville Motors, Inc.*, 1996 WL 447261 (N.D.Ill. Aug.2, 1996) (Holderman, J.); *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 1996 WL 316975 (N.D.Ill. June 10, 1996) (Gettleman, J.).

38. *Gibson*, 112 F.3d at 286.

39. Def.'s Memo, Exhibit 1 (Copy of Retail Installment Contract).

dy at law.[40]   However, "Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract."[41]   In other words, "[q]uasi-contractual remedies may not supplant a contract between the parties."[42]   In addition, "[a] plaintiff can recover in unjust enrichment only if there is no other practical remedy available by which the impoverishment might be or might reasonably have been avoided."[43]

■ The Greens argue the fact there is a contract between the parties does not bar an "unjust enrichment" action when the contract was entered into through misrepresentation. The Greens cite *Carter* in support of this argument.  In *Carter*, there was no contract between the plaintiff and defendant.[44]   In fact, the misrepresentation was made by a third party who fled the jurisdiction to avoid criminal prosecution.  However, there is no language in *Carter* which supports the Greens's argument.   Therefore, because there is a contract between the parties, the Court holds the Greens do not have a cause of action for "unjust enrichment."   Accordingly, the Court grants Hancock's motion for summary judgment on this issue.

## CONCLUSION

In conclusion, the Court grants Hancock's motion for summary judgment on the following claims:

I.   Hancock is liable as an assignee under 15 U.S.C. § 1641(a) because Levis understated the "finance charge" disclosed to the Greens by $18 in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d).

II.   By understating the "finance charge," Hancock is liable as an assignee under 15 U.S.C. § 1641(a) because Levis necessarily overstated the "amount financed" disclosed to the Greens by $18 in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

III.   Since the "finance charge" and the "amount financed" were understated and overstated, respectively, Hancock is liable as an assignee under 15 U.S.C. § 1641(a), because Levis necessarily understated the "annual percentage rate" disclosed to the Greens in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

IV.   Hancock is liable as an assignee, both under 15 U.S.C. § 1641(a) and the FTC Holder Notice, because Levis inaccurately disclosed the amount of the "license fee" in violation of 15 U.S.C. § 1638(a)(2)(B)(iii), 12 C.F.R. § 226.18(c)(1)(iii), and 12 C.F.R. § 226.18(c)(2).

V.   Hancock owes equitable restitution because Levis overcharged for a "license fee."

Therefore:

IT IS ORDERED that the motion for summary judgment filed by Hancock be and it is hereby GRANTED.

---

40.   *Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La.1995) (citations omitted).

41.   *SMP Sales Mgt., Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir.1992) (citations omitted).

42.   *Marple v. Kurzweg*, 902 F.2d 397, 401 (5th Cir.1990) (citations omitted).

43.   *Carter v. Flanagan*, 455 So.2d 689, 692 (La. App. 2d Cir.1984).

44.   *See Carter*, 455 So.2d at 694.