Lillie D. BROWN and Lois N. Gomes, et al.

v.

COLEMAN INVESTMENTS, INC., et al.

No. Civ.A. 96–3297–B–M2.

United States District Court, M.D. Louisiana.

Jan. 23, 1998.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for Lillie D Brown, plaintiff.

Garth Jonathan Ridge, Baton Rouge, LA, for Lois N. Gomes, for plaintiffs Marilyn Greene, Stephanie Greene, Willie Greene.

Allen J. Myles, Plaquemine, LA, Garth Jonathan Ridge, Baton Rouge, LA, for plaintiff Barbie Darnell Harris.

Allen J. Myles, Plaquemine, LA, for plaintiffs Marilyn Greene, Stephanie Greene, Willie Greene.

Kirk A. Patrick, III, McGlinchey Stafford Lang, Baton Rouge, LA, John Joseph Price, John O. Shirley & Associates, Baton Rouge, LA, for defendants Coleman Investments, Inc., Robert Coleman.

Paul S. West, McGlinchey Stafford Lang, Baton Rouge, LA, Anthony Joseph Rollo, Jr., Michael H. Rubin, Lauren L. Zimmermann, McGlinchey Stafford Lang, New Orleans, LA, David S. Willenzik, McGlinchey Stafford Lang, New Orleans, LA, for defendant Toyota Motor Credit Corporation.

Lloyd Eades Hogue, David Felicien Waguespack, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, Orleans, LA, Patrick Johnson, Jr., Lemle & Kelleher, New Orleans, LA, for defendant Hibernia National Bank.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Edelman & Combs, Chicago, IL, Garth Jonathan Ridge, Baton Rouge, LA, for Lillie D. Brown.

## RULING ON COLEMAN INVESTMENT, INC.'S AND ROBERT COLEMAN'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT ON THE PLEADINGS

POLOZOLA, District Judge.

Coleman Investments, Inc. ("Coleman Toyota") and Robert Coleman ("Coleman") have filed a motion for summary judgment and for judgment on the pleadings. Because the Court has considered and relied on evidence outside of the pleadings, the Court will treat the motion as a motion for summary judgment. For reasons which follow, the motion for summary judgment filed by Coleman Toyota and Coleman is GRANTED.

## FACTS & PROCEDURAL HISTORY

Lillie D. Brown ("Brown") and Lois N. Gomes ("Gomes") have filed separate claims against the various defendants [1] under the Truth in Lending Act [2] ("TILA"), the Racketeer Influenced and Corrupt Organizations Act [3] ("RICO") and a state law claim for "equitable restitution." [4] Plaintiffs have asserted claims under TILA and for "equitable restitution" against Coleman Toyota. The plaintiffs have also filed a RICO claim for a violation of 18 U.S.C. § 1962(c) against Coleman. The Court now turns to a brief discussion of the facts of this case.

On or about July 22, 1995, Brown executed a retail installment contract with Coleman Toyota for the purchase of a 1994 Toyota Tercel. The Truth in Lending Disclosure statement prepared by Coleman Toyota disclosed an "amount financed" [5] of $13,157.52, a "finance charge" [6] of $3,487.08 and an "annual percentage rate" [7] of 9.50%. Included in the $13,157.52 "amount financed" was a $40 charge for a "license fee." The parties agree that the actual amount of the "license fee" charged by the State of Louisiana was $22.92. In addition, Coleman Toyota charged Brown the $25 cost of ad valorem taxes owed by Coleman Toyota as a result of the sale. Brown's retail installment contract

---

1. The defendants in this action are Coleman Toyota, Toyota Motor Credit Corporation ("TMCC"), Hibernia National Bank ("Hibernia"), Coleman and Robert Coleman, Jr. The fictitious defendants named by the plaintiffs will be ignored by the Court pursuant to the Federal Rules of Civil Procedure.

2. 15 U.S.C. § 1601, et seq.

3. 18 U.S.C. § 1961, et seq.

4. The plaintiffs filed a motion to certify this suit a class action lawsuit, but as of the date of this ruling, the Court has not ruled on that motion.

5. See 15 U.S.C. § 1638(a)(2) for definition of "amount financed."

6. See 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(a) for definition of "finance charge."

7. See 15 U.S.C. § 1638(a)(4), 12 C.F.R. § 226.18(e) and 12 C.F.R. § 226.22 for discussion of the "annual percentage rate."

was assigned to TMCC which financed the vehicle.

On or about September 20, 1995, Gomes executed a retail installment contract with Coleman Toyota for the purchase of a 1995 Toyota Tercel. The Truth in Lending Disclosure statement prepared by Coleman Toyota disclosed an "amount financed" of $12,-212.42, a "finance charge" of $4,357.18 and an "annual percentage rate" of 12.50%. Included in the $12,212.42 "amount financed" was a $97 charge for a "license fee." The actual amount of the "license fee" charged by the State of Louisiana was $25. In addition, Coleman Toyota also assessed Gomes the $21 cost of ad valorem taxes owed by Coleman Toyota. Gomes's retail installment contract was assigned to Hibernia which provided the financing for the vehicle.

Based upon the above facts, Brown and Gomes have asserted the various claims listed above against Coleman Toyota and Coleman. The Court now turns to a discussion of the legal principles the Court must follow in ruling on this motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [8] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." [9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." [10] "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." [11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[12] The nonmovant's burden may not be satisfied by conclusory, allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts ." [14] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." [15] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

When affidavits are used to support or oppose a motion for summary judgment, the affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affir-

**8.** Fed.R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir.1996).

**9.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

**10.** *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553).

**11.** *Little*, 37 F.3d at 1075.

**12.** *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.1996).

**13.** *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.

**14.** *Id. Accord, S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996).

**15.** *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.) (citing *Little*, 37 F.3d at 1075, *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir.1995).)

**16.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

matively that the affiant is competent to testify to the matters stated therein." [17] Affidavits that are not based on personal knowledge or that are based merely on information and belief do not satisfy the requirements of Rule 56(e), and those portions of an affidavit that do not comply with Rule 56(e) are not entitled to any weight and cannot be considered in deciding a motion for summary judgment.[18] Neither shall conclusory affidavits suffice to create or negate a genuine issue of fact.[19]

## ANALYSIS

The Court will first address the various TILA claims filed against Coleman Toyota.

### (I) *TILA Claims*

While each of the plaintiffs have alleged the same violations of TILA, each claim is based on a different set of facts. Brown has alleged the following violations of TILA by Coleman Toyota: (1) by charging $40 for a "license fee" that actually cost $22.92, Coleman Toyota understated the "finance charge" by $17.08, overstated the "amount financed" by $17.08 and understated the "annual percentage rate;" (2) Coleman Toyota failed to disclose the fact of or amount of the $17.08 upcharge in the "license fee;" and (3) Coleman Toyota assessed Brown $25 for ad valorem taxes which were legally owed by Coleman Toyota thereby understating the "finance charge." Gomes has alleged the following violations of TILA: (1) by charging $97 for a "license fee" that actually cost $25, Coleman Toyota understated the "finance charge" by $72, overstated the "amount financed" by $72 and understated the "annual percentage rate;" (2) Coleman Toyota failed to disclose the fact of or amount of the $72 upcharge in the "license fee;" and (3) Coleman Toyota assessed Gomes $21 for ad valorem taxes which were legally owed by Coleman Toyota thereby understating the "finance charge." The Court will discuss each of these claims separately.

### (I)(A) *Effects of the Alleged Understatement of the "Finance Charge"*

■ These claims are based on the characterization of the "license fees" charged by Coleman Toyota to Brown and Gomes. Coleman Toyota charged Brown $40 for the "license fee" when the actual cost of the "license fee" was $22.92, amounting to an upcharge of $17.08. Coleman Toyota charged Gomes $97 for the "license fee" when the actual cost of the "license fee" was $25, amounting to an upcharge of $72. The plaintiffs contend Coleman Toyota violated TILA by including the amount of the upcharges in the "amount financed," instead of in the "finance charge." Thus, a summary of the violations of TILA which plaintiffs claim result from the alleged misclassification of the upcharges may be summarized as follows:

1. Coleman Toyota understated the "finance charge" disclosed to Brown and Gomes by $17.08 and $72, respectively, in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d).

2. By understating the "finance charge," Coleman Toyota necessarily overstated the "amount financed" disclosed to Brown and Gomes by $17.08 and $72, respectively, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).

3. Because the "finance charge" and the "amount financed" were understated and overstated, respectively, Coleman Toyota necessarily understated the "annual percentage rate" disclosed to Brown and Gomes in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

Coleman Toyota argues the upcharges assessed to Brown and Gomes are not "finance charges" because the entire amount charged to Brown and Gomes for the "license fee" meets the comparable cash transaction exception to the definition of "finance

---

**17.** Fed.R.Civ.P. 56(e); *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.*, 993 F.2d 1178, 1182 (5th Cir.1993).

**18.** *Richardson v. Oldham*, 12 F.3d 1373, 1378–79 (5th Cir.1994).

**19.** *McCallum Highlands*, 66 F.3d at 92; *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992) (citations omitted).

charge."[20] The Court finds there are genuine issues of material fact in dispute which preclude summary judgment on the issue of whether the "license fees" charged to Brown and Gomes meets the comparable cash transaction exception to the definition of "finance charge." Therefore, Coleman Toyota's motion for summary judgment on this issue is denied.

### (I)(B) *Inaccurate Disclosure of a "License Fee"*

■ The plaintiffs also claim that the $40 "license fee" and $97 "license fee" charged to Brown and Gomes, respectively, are inaccurate disclosures, in violation of 15 U.S.C. § 1638(a)(2)(B)(iii),[21] 12 C.F.R. § 226.18(c)(1)(iii),[22] and 12 C.F.R. § 226.18(c)(2),[23] because Coleman Toyota failed to disclose the fact of or the amount of the upcharges. To resolve this claim, the Court must determine whether, under the above cited statute and regulations, Coleman Toyota must disclose: (1) the fact that an upcharge is included in the "license fee;" (2) the specific amount of the upcharge; or, (3) neither the fact nor the amount of the upcharge. The record clearly shows that Coleman Toyota has not disclosed the fact of or the amount of the upcharge.

For the reasons set forth in the Court's "Ruling on Motion for Summary Judgment Filed by Hancock Bank of Louisiana" in *Green v. Levis Motors,* ——F.Supp.——, 1997 WL 840034 (M.D.La.1997),[24] the Court denies Coleman Toyota's motion for summary judgment on this issue. The Court holds that Coleman Toyota must disclose either the fact that there is an upcharge or the amount of the upcharge.

■ Coleman Toyota asserts the "good faith" defense set forth in 15 U.S.C. § 1640(f) which provides as follows:

> No provision of this section, section 1607(b), section 1607(c), section 1607(e), or section 1611 of this title imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approval under such

**20.** "Finance charge" is defined by 15 U.S.C. § 1605(a) of TILA as follows:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. *The finance charge does not include charges of a type payable in a comparable cash transaction* ... (emphasis added).

"Finance charge" is also defined by 12 C.F.R. § 226.4(a) of Regulation Z as follows:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. *It does not include any charge of a type payable in a comparable cash transaction* (emphasis added).

**21.** 15 U.S.C. § 1638(a)(2)(B)(iii) provides as follows:

> In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, *upon a written request,* a written itemization of the amount financed.... Upon receiving an

affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable: ... (iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person ... (emphasis added).

**22.** 12 C.F.R. § 226.18(c)(1)(iii) states that for each transaction, the creditor shall disclose a "separate written itemization of the amount financed, including ... (iii) [a]ny amounts paid to other persons by the creditor on the consumer's behalf[, and] [t]he creditor shall identify those persons."

**23.** Similar to 15 U.S.C. § 1638(a)(2)(B) 12 C.F.R. § 226.18(c)(2) provides that the creditor need not disclose a separate written itemization of the amount financed if the creditor discloses to the consumer that the consumer has the right to obtain this separate written itemization, and the consumer declines to exercise this right.

**24.** 994 F.Supp. 735 (M.D.La.1997).

procedures as the Board may prescribe therefore notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

In *Cox v. First Nat'l Bank of Cincinnati*, the Court explained the meaning of § 1640(f) as follows:

This defense is available to a creditor only if he acts 'in conformity' with certain official interpretations of the Truth in Lending Act. It does not protect a creditor who fails to conform with a regulation or interpretation through an honest, good faith mistake. In other words, § 1640(f) does not protect a creditor from its own mistaken interpretation of the law.[25]

However, in *Charles v. Krauss Company*, the Fifth Circuit Court of Appeals held that "the congressional drafters of the good-faith defense amendment stated that they did not believe that 'a creditor should be forced to choose between the Board's construction of the Act and the creditor's own assessment of how a court may interpret the Act.' "[26]

The Court finds the good-faith defense applies under the facts of this case. The statute and regulation at issue here are 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 226.18(c)(1)(iii), respectively. The Federal Reserve Board's interpretation of this statute and regulation is extremely vague and ambiguous.[27] Many courts have agreed with Coleman Toyota's interpretation of the commentary holding that a creditor *may*, but is not required to, disclose the fact of or the amount of any upcharge included in amounts paid to others.[28] A number of other courts have agreed with this Court holding that a creditor must disclose either the fact of or the amount of the upcharge included in amounts paid to others.[29]

In this case, Coleman Toyota did not merely fail to comply with the commentary due to its own honest, good faith mistake. Instead, Coleman Toyota complied in good faith with a reasonable interpretation of the commentary. Coleman Toyota also did not make a mistake in interpreting the commentary because Coleman Toyota's good faith interpretation was in agreement with the interpretation made by many other courts. It is true that Coleman Toyota failed to accurately forecast how this Court would interpret the commentary. Under § 1640(f) and the Fifth Circuit's opinion in *Charles*, however, Coleman Toyota had no duty to forecast this Court's interpretation of the commentary and statute. Therefore, the Court finds the

---

**25.** 751 F.2d 815, 825 (6th Cir.1985).

**26.** 572 F.2d 544, 549 (5th Cir.1978) (quoting *Ives v. W.T. Grant Co.*, 522 F.2d 749, 758 (2d Cir. 1975)).

**27.** The Federal Reserve Board has interpreted 15 U.S.C. § 1638(a)(2)(B)(iii) and 12 C.F.R. § 226.18(c)(1)(iii) in *Official Staff Commentary on Regulation Z Truth in Lending*, § 226.18, ¶ 18(c)(1)(iii)–2 (April 1, 1996) which states as follows:

*Charges added to amounts paid to others.*
A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to section 226.18(c)), the creditor in such cases *may* reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor *could* add to the category "amount paid to

others" language such as "(we may be retaining a portion of this amount)" (emphasis added).

**28.** *See Taylor v. Quality Hyundai, Inc.*, 932 F.Supp. 218 (N.D.Ill.1996) (Norgle, J.); *El–Mohammed v. Old Orchard Chevrolet–Geo, Inc.*, 1997 WL 106243 (N.D.Ill. Feb.10, 1997) (Holderman, J.); *Johnson v. Rohr–Ville Motors, Inc.*, 1996 WL 447261 (N.D.Ill. Aug.2, 1996) (Holderman, J.); *Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 1996 WL 316975 (N.D.Ill. June 10, 1996) (Gettleman, J.).

**29.** *See Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 (7th Cir.1997); *Ritter v. Durand Chevrolet, Inc.*, 932 F.Supp. 32 (D.Mass.1996); *Cirone–Shadow v. Union Nissan of Waukegan*, 955 F.Supp. 938 (N.D.Ill.1997) (Kocoras, J.); *McPhan v. Geo R. Gibson Chevrolet*, 1996 WL 685449 (N.D.Ill. Nov.25, 1996) (Nordberg, J.); *Lindsey v. Ed Johnson Oldsmobile*, 1996 WL 411336 (N.D.Ill. July 19, 1996) (Kocoras, J.); *Bambilla v. Evanston Nissan, Inc.*, 1996 WL 284954 (N.D.Ill. May 21, 1996) (Leinenweber, J.).

"good faith conformity" defense must and should apply under the facts of this case. Therefore, the Court grants Coleman Toyota's motion for summary judgment on the issue of whether it inaccurately disclosed the "license fee" to the plaintiffs by failing to indicate the fact of or the amount of the upcharge.

### (I)(C) *Disclosure of Ad Valorem Tax*

■ Coleman Toyota also assessed Brown and Gomes $25 and $21, respectively, for the cost of the ad valorem taxes owed by Coleman Toyota as a result of the sales. Coleman Toyota has a policy and practice of including in both the cash and credit price of a vehicle the amount of ad valorem taxes that Coleman Toyota is required to pay on the sale of each vehicle.[30] For reasons set forth in the Court's "Ruling on Toyota Motor Credit Corporation's Motion for Summary Judgment and Judgment on the Pleadings,"[31] the Court finds the charges for ad valorem taxes meet the comparable cash transaction exception to the definition of "finance charge." Therefore, Coleman Toyota's motion for summary judgment on this issue is granted.

### (I)(D) *Summary and Conclusion—Substantive TILA Violations*

Because there are genuine issues of material fact in dispute, the Court denies Coleman Toyota's motion for summary judgment on the issue of whether the "amount financed," "finance charge," and "annual percentage rate" disclosed to Brown and Gomes were misstated due to the inclusion in the "amount financed" of the upcharges in the "license fees." However, the Court grants Coleman Toyota's motion for summary judgment on

the issue of whether the fact of or the amount of the upcharges in the "license fees" must be disclosed to Brown and Gomes, respectively, due to the applicability of the "good faith conformity" defense. Finally, the Court grants Coleman Toyota's motion for summary judgment on the issue of whether Coleman Toyota's practice of passing through the cost of ad valorem taxes to its customers is a violation of TILA.

### (II) *RICO Claim*

■ The plaintiffs have filed a RICO claim pursuant to 18 U.S.C.1962(c)[32] against Coleman. "In order to state a claim under 18 U.S.C. § 1962, a plaintiff must allege: 1) the conduct; 2) of an enterprise; 3) through a pattern; 4) of racketeering activity."[33] In this case, the plaintiffs allege the racketeering activity is the use of the mail and wires to "intentionally] inflat[e] . . . fees listed as governmental fees on retail installment contracts for motor vehicles, with the intention of pocketing the difference between the fee charged to consumers and the actual fees submitted to the state of Louisiana . . . for license fees."[34] According to the plaintiffs, the racketeering activity also includes the allegedly fraudulent scheme of passing through the cost of ad valorem taxes to consumers. Coleman argues the plaintiffs' RICO claims should be dismissed because the plaintiffs have failed to plead fraud with particularity in violation of Rule 9(b). The Court now turns to a discussion of the merits of Coleman's argument.

■ The predicate acts alleged by the plaintiffs are mail fraud[35] and wire fraud.[36] Since the predicate acts alleged by the plaintiffs are mail fraud and wire fraud, Brown

---

**30.** TMCC's Memorandum in Support of Motion for Summary Judgment ("TMCC's Memo"), Exhibit 4 (Affidavit of Julie Fields).

**31.** 994 F.Supp. 735.

**32.** § 1962(c) provides the following:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt.

**33.** *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)).

**34.** RICO Case Statement, No. 5.

**35.** 18 U.S.C. § 1341.

**36.** 18 U.S.C. § 1343.

must comply with Rule 9(b) which requires particularity in pleading the "circumstances constituting fraud." "At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents' of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." [37] In other words, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." [38] Considering the above principles, Brown must particularly plead the following elements of fraud: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury." [39] Rule 9(b) does allow "[a]llegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive to be made generally." [40]

Based on the above principles, the plaintiffs have failed to meet the particularity requirement of Rule 9(b).[41] The plaintiffs' Second Amended Complaint is also devoid of any allegations of Coleman's intent to defraud. Furthermore, neither the plaintiffs' Second Amended Complaint nor their RICO Case Statement contains any allegations regarding the time, place or manner of specific actions taken by Coleman which furthered the alleged fraud. Moreover, the plaintiffs have failed to plead the when, where and how of the specific actions committed by Coleman which were fraudulent. The allegations in the plaintiffs' Second Amended Complaint and RICO Case Statement fall short of the particularity necessary to plead fraud under Rule 9(b). Therefore, Coleman's motion for summary judgment on the RICO claim is granted.

### III. *"Equitable Restitution"*

The plaintiffs also assert a claim for "equitable restitution" against Coleman Toyota seeking to collect the amount of the upcharge included in the "license fees" and the amount of ad valorem taxes which were assessed to plaintiffs. For the reasons set forth in the Court's "Ruling on Toyota Motor Credit Corporation's Motion for Summary Judgment on the Pleadings," [42] Coleman Toyota's motion for summary judgment is granted on this issue.

### IV. *Lack of an Indispensable Party*

■■■ Coleman Toyota and Coleman argue this case should be dismissed pursuant to Rule 19 of the Federal Rules of Civil Procedure for failure to join an indispensable party. Brown's husband, the now deceased Louis Brown, also signed the retail installment contract at issue in this suit. Thus, Coleman Toyota and Coleman contend the estate of Louis Brown is required for the complete adjudication of this matter. The Court agrees that the Estate of Louis Brown should be made a party plaintiff in this suit.

---

**37.** *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997); *also see Tel–Phonic Services, Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1297 at 590 (1990); *also see Keith v. Stoelting, Inc.,* 915 F.2d 996, 1000 (5th Cir.1990)).

**38.** *Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997) (citing *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)).

**39.** *Williams,* 112 F.3d at 177 (citing *Cyrak v. Lemon,* 919 F.2d 320 (5th Cir.1990)).

**40.** *Tel–Phonic,* 975 F.2d at 1139.

**41.** The plaintiffs cite *Brister v. All Star Chevrolet, Inc.,* 986 F.Supp. 1003 (M.D.La.1997) (Berrigan, J.) (quoting *Boston & Maine Corp. v. Town of Hampton,* 987 F.2d 855, 866 (1st Cir.1993)) for the proposition that "[c]ourts are aware of the difficulties in accumulating the information necessary to withstand a 9(b) motion and have recognized that 'when the opposing party is the only practical source for discovering the specific facts supporting a pleader's conclusion, less specificity of the pleading may be required pending discovery.'" In this case, the plaintiffs have neither alleged that the opposing party is the only practical source of the information necessary to withstand a Rule 9(b) motion nor have the plaintiffs asked for more time to complete discovery. In addition, the *Brister* case did not take into account the Fifth Circuit's opinion in *Williams v. WMX Technologies, Inc.,* 112 F.3d 175 (5th Cir. 1997) which was decided the same day.

**42.** 994 F.Supp. 735.

Therefore, Brown has twenty days from the date of this order to amend her complaint and add the Estate of Louis Brown as a plaintiff or Brown's suit will be dismissed.

## V. *Conclusion*

In conclusion, the Court finds there are genuine issues of material fact which preclude summary judgment on the issue of whether the "finance charge" disclosed by Coleman Toyota was understated by the amount of the upcharges in the "license fees" paid by the plaintiffs. Based on the applicability of the "good faith conformity" defense set forth in 15 U.S.C. § 1640(f), the Court grants summary judgment on the issue of whether Coleman Toyota is required to disclose the fact of or the amount of the upcharges in "license fees" charged to the plaintiffs. The Court also grants the motion for summary judgment, on the issue of whether the ad valorem tax, owed by Coleman Toyota, and passed through to the plaintiffs, should have been included in the "finance charge," because the Court finds the cost of the ad valorem tax meets the comparable cash transaction exception to the definition of "finance charge."

With regard to the RICO claim under § 1962(c), the Court grants Coleman's motion for summary judgment because of the plaintiffs' failure to plead fraud with particularity in compliance with Rule 9(b) and the Fifth Circuit's mandate in *Williams.*

The Court also grants Coleman Toyota's motion for summary judgment on the claim for "equitable restitution."

Finally, the Court orders the plaintiffs to add the estate of Louis Brown as a party plaintiff in this suit within twenty (20) days or this suit shall be dismissed.

IT IS SO ORDERED.